

# FILED

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

APR 2 9 2005  NF

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

STEPHEN SOTELO, individually and on behalf of all persons similarly situated,

Plaintiffs,

v.

DIRECTREVENUE, LLC; DIRECTREVENUE HOLDINGS, LLC; BETTERINTERNET, LLC; BYRON UDELL & ASSOCIATES, INC., D/B/A ACCUQUOTE; AQUANTIVE, INC., and JOHN DOES 1-100,

Defendants.

Case No. **05C  2562**

**JUDGE GETTLEMAN**

**MAGISTRATE JUDGE LEVIN**

## NOTICE OF REMOVAL

Defendants DirectRevenue LLC, DirectRevenue Holdings LLC, and BetterInternet, LLC (collectively, "Defendants"), pursuant to 28 U.S.C. § 1453, remove this action to this Court, respectfully stating the following in support:

1.    Defendants are named defendants in a civil action pending in the Circuit Court of Cook County, Illinois, Chancery Division, captioned *Stephen Sotelo v. DirectRevenue, LLC, et al.*, Case No. 05 CH 05883.

2.    The action is removable to this Court pursuant to 28 U.S.C. § 1453 in that, as shown below, it is one over which the district courts of the United States have original jurisdiction under 28 U.S.C § 1332(d)(2), because it is filed as a class action under the Illinois rule similar to Federal Rule of Civil Procedure 23, the Plaintiff and Defendants are citizens of different states, and the matter in controversy exceeds the sum or value of $5,000,000.

3.      Plaintiff Stephen Sotelo is alleged to be an individual who resides in the state of Illinois.

4.      Defendants are Delaware limited liability companies with principal places of business in New York, New York.

5.      Defendants have a good faith belief, based on the allegations in the Complaint, that the matter in controversy exceeds $5,000,000 as follows:  Plaintiff alleges that defendant BetterInternet, LLC's software has affected approximately 400,000 computers in the state of Illinois.  While Plaintiff has conspicuously failed to specifically allege a monetary amount of damages, accepting Plaintiff's allegations as true (which Defendants do not), each computer would have had to sustain only $12.50 in damages to reach the required aggregate minimum of $5,000,000.  In fact, the Complaint suggests the Plaintiff may be alleging damages of $30.00 per computer, per year.  (*See* Complaint ¶ 20.)

6.      The exception to jurisdiction enumerated in 28 U.S.C. § 1332 (d)(4) does not apply in this case, because, *inter alia*, the alleged conduct of defendant Byron Udell and Associates, Inc., the sole Illinois defendant, does not form a significant basis for the claims asserted by Plaintiff.

7.      The Summons and Complaint in this matter were served upon Defendants less than 30 days prior to the filing hereof, on or about April 1, 2005.  Therefore, this Notice of Removal is timely under 28 U.S.C. § 1446.

8.      Annexed hereto as Exhibit A are copies of the Summons, Complaint, and Plaintiff's Motion to Certify Class (along with "Notice of Motion" and "Notice of Filing"), which are the only process, pleadings, or orders served upon Defendants.

2

9.    Pursuant to 28 U.S.C. § 1446(d), Defendants are serving Plaintiff with written notice of this removal, and Defendants will file a copy of this Notice with the Circuit Court of Cook County, Chancery Division.

WHEREFORE, Defendants DirectRevenue LLC, DirectRevenue Holdings LLC, and BetterInternet, LLC request that this action proceed as an action removed to this Court.

Dated: April 29, 2005

Respectfully submitted,

Bradford Lyerla, Esq.
Anthony Hind, Esq.
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago, IL  60606-6357
312-474-6300

Attorneys for Defendants
DirectRevenue, LLC,
Direct Revenue Holdings, LLC,
BetterInternet, LLC , and
Byron Udell & Associates, Inc.

PRINTED ON
RECYCLED PAPER

**EXHIBIT**

**A**

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 ( ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, _____ CHANCERY _____ DIVISION

(Name all parties)

Stephen Sotelo, individually and on behalf of all persons
similarly situated,            Plaintiffs,

v.

DirectRevenue, LLC, et al.,

                    Defendants.

No. **05CH05883**

## SUMMONS

To each Defendant: DirectRevenue, LLC, c/o Phillips Nizer, LLP, Attention: Albert H. Wang, Esq., 666 Fifth Avenue, New York, New York 10103

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____ 802 _____, Chicago, Illinois 60602

| | |
|---|---|
| ☐ **District 2 - Skokie** | ☐ **District 3 - Rolling Meadows** |
| 5600 Old Orchard Rd. | 2121 Euclid |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 |

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

| | |
|---|---|
| ☐ **District 5 - Bridgeview** | ☐ **District 6 - Markham** |
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. |
| Bridgeview, IL 60455 | Markham, IL 60426 |

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

MAR 3 1 2005

WITNESS, _____, _____

Atty. No.: 32920

Name: The Collins Law Firm

Atty. for: Plaintiffs

Address: 1770 N. Park Street, Suite 200

City/State/Zip: Naperville, IL 60563

Telephone: (630) 527-1595

Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)   (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION**

|  |  |  |
|---|---|---|
| STEPHEN SOTELO, individually and on behalf of all persons similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 05 CH 05883 |
| DIRECTREVENUE, LLC; DIRECTREVENUE HOLDINGS, LLC; BETTERINTERNET, LLC, BYRON UDELL & ASSOCIATES, INC., D/B/A ACCUQUOTE; AQUANTIVE, INC., and JOHN DOES 1-100, | ) ) ) ) ) ) ) | **JURY DEMAND** |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Stephen Sotelo, individually, and on behalf of all persons similarly situated, by and through his attorneys, for his Complaint against Defendants, states and alleges as follows:

### Introduction

Defendants, who are either members or advertising supporters of the Internet "spyware" industry, have unlawfully used and damaged Plaintiffs' computers to make money for themselves, while willfully disregarding Plaintiffs' rights to use and enjoy their personal property.

Defendant DirectRevenue deceptively downloaded harmful and offensive spyware to Plaintiffs' computers. The spyware tracked Plaintiffs' Internet use, invaded their privacy, and damaged their computers. Relying on DirectRevenue's spyware as the key to getting inside Plaintiffs' computers and learning their Internet browsing habits, Defendants aQuantive and AccuQuote bombard Plaintiffs' computers with intrusive advertisements.

Plaintiffs bring this action to enjoin Defendants' unlawful misconduct and seek compensation for the damage caused.

**Parties**

1.     Plaintiff Stephen Sotelo is a resident of the state of Illinois.

2.     Defendant Byron Udell & Associates, Inc., d/b/a AccuQuote is an Illinois corporation with its principal place of business located in Wheeling, Illinois. ("AccuQuote"). AccuQuote has a nationwide business of acting as agent for those shopping for life insurance on the Internet.

3.     Defendant BetterInternet, LLC, is a Delaware limited liability company with its principal place of business located at 107 Grand Street, 3rd Floor, New York, New York, 10013. Defendant DirectRevenue LLC is, upon information and belief, the sole member and manager of BetterInternet LLC.  Upon information and belief, Defendant DirectRevenue Holdings, LLC is a holding company for BetterInternet, LLC and Defendant DirectRevenue LLC.  DirectRevenue uses the trade name "BetterInternet" for its spyware that is described herein.  Collectively, these defendants are referred to as "DirectRevenue" in this Complaint.

4.     Defendant aQuantive, Inc. is a publicly traded Washington corporation headquartered in Seattle, Washington.   aQuantive, Inc. operates through three operating units: AvenueA/Razorfish, Atlas DMT, and DRIVEpm.  At times relevant to this lawsuit, aQuantive maintained two offices in Chicago, Illinois.

5.     John Does 1-100 represent the individual employees, officers, agents, and other advertisers who personally engaged in the misconduct alleged herein.  When their identities are ascertained, they will also be named as Defendants.

2

## Jurisdiction

6.      This Court has personal jurisdiction over the Defendants for, *inter alia*, the following reasons:

(a)     Byron Udell & Associates, Inc., d/b/a AccuQuote is an Illinois Corporation, headquartered in Cook County, Illinois.

(b)     DirectRevenue causes its spyware to be downloaded onto computers in Cook County, Illinois.    This spyware damages computers located in, *inter alia*, Cook County, Illinois. DirectRevenue contracts with, and receives money from, *inter alia*, Cook County-based companies who advertise through its spyware on computers located in Cook County. Upon information and belief, hundreds of thousands of computers in Illinois have been infected with DirectRevenue's spyware.    Finally, DirectRevenue monitors computers, *inter alia*, within Cook County.

(c)     aQuantive, Inc. maintains two offices and has numerous employees in Chicago, Illinois. In cooperation with DirectRevenue, aQuantive downloads advertisements to computers located in Cook County, Illinois.

*Defendants' Involvement in the Spyware Industry:*

7.      As used herein, "spyware" describes computer software downloaded to an end-user's computer over the Internet, without consent, that permits the company who downloaded the software (i.e., the spyware company) to track, profile, and analyze a computer user's behavior, for the purpose of sending him or her targeted advertising, which the spyware company can place for its "clients".[1]

---

[1]There are many different definitions of "spyware" according to Google.com, including: (1) "also known as 'adware', [i]t is a hidden software program that transmits user information via the Internet to advertisers in exchange for free downloaded software." (2) "Software that tracks usage and reports it to others, such as advertisers.  Usually the tracking is concealed from the user of the software."

3

8.      For example, if a computer infected with DirectRevenue's spyware is browsing/viewing music-related Internet sites, the spyware sends a signal of such activity back to DirectRevenue, which then targets the computer user with advertisements from competing music companies who have paid for access to Plaintiffs' computers via the unlawfully-installed spyware.

9.      DirectRevenue claims access to 12,000,000 computers in the United States and engages in misconduct in gaining, and maintaining, such access.  For example, on December 12, 2004, *Newsweek* reported that:

> One company that epitomizes the challenges and pitfalls of making this transition [to comply with expected legislation]—and one that even adware insiders know little about—is New York-based DirectRevenue. Industry watchers familiar with the company say it has stooped as low as any of its rivals in the practices it uses to distribute its software.
>
> Consumer advocates familiar with the company charge that DirectRevenue has engaged in an array of unethical practices: it secretly installs its software onto computers, designs its adware so that it reinstalls after users delete it and has changed its name so often that frustrated users can't find the company to complain. These critics aren't convinced the company is ready to reform. "These guys seem to be hanging on to some of the more subversive methods of getting on a machine and staying there," says James Manning, head of research and anti-spyware company Aluria Software. http://www.msnbc.msn.com/id/6689667/site/newsweek/)

10.     Defendant aQuantive, a marketing company, acts as an advertising agent for companies that advertise their products on the Internet.  aQunative works with DirectRevenue to send targeted advertisements to Plaintiffs' computers.   Likewise, AccuQuote, or someone on its behalf, sends advertisements to Plaintiffs' computers by utilizing DirectRevenue's spyware. The advertising sent by Defendants unlawfully interferes with Plaintiffs' computers and causes Plaintiffs' damages, as alleged herein.

*How Spyware is installed onto computers:*

11. DirectRevenue engages in uniformly deceptive misconduct to download its spyware. As *Newsweek* reported, DirectRevenue "secretly installs its software onto computers." This is how it's done: DirectRevenue bundles its spyware into other legitimate software which is available to be downloaded for "free" on the Internet. For example, a computer user may find a supposedly "free" software program on the Internet, such as a video game. When the computer user downloads and installs that "free" game, he or she simultaneously (but unknowingly) downloads DirectRevenue spyware, since it was bundled into the game being downloaded. The computer users do not consent, let alone have knowledge, that spyware was being installed on their computers because DirectRevenue has deceptively caused its spyware (sometimes known as BetterInternet) to download without consent or knowledge. Indeed, DirectRevenue has an agreement governing its spyware called the "BetterInternet End User License Agreement" (hereafter, the "BetterInternet EULA") that purports to inform a consumer about advertisements and monitoring that may result if he/she accepts its terms. However, DirectRevenue deceptively installs its software in at least three different ways to avoid showing the BetterInternet EULA to the computer user.[2]

    a. First, for computers with Microsoft security settings set to "low", DirectRevenue spyware automatically installs when a user downloads a free software program, such as a game. Users are never even shown the BetterInternet EULA, told if its existence, or advised of the need for any sort of licensing agreement.

---

[2] DirectRevenue clearly knows how to show an end user license agreement to a computer user. For example, when providing the legitimate computer program (*i.e.*, the game) users are provided with a different end user license agreement that governs only the game, and not the spyware. Of course, these other end user license agreements say nothing about being monitored, bombarded with advertisements, etc.

5

b.　　　Second, for computer users who have Microsoft Windows' Service Pack 2 (a security feature) installed on their computer, the following message pops-up as spyware is being downloaded:



This unintelligible message says nothing about spyware being installed onto a user's computer. There is nowhere to click "Yes" despite the fact that the message sent is that "By clicking Yes". This message does not even show the user what they are "acknowledging" if there were a "Yes" to click. The stated program name is "the software" rather than a bona fide program name. Nor is there any disclosure that the software includes spyware. If a user were to click on the link showing the software name (which is not the name of software, but rather is a sentence that makes absolutely no

6

sense) the user would see the BetterInternet EULA. However, users are never asked to agree to the BetterInternet EULA, nor instructed to click on the link to see such BetterInternet EULA, nor even told of the availability of the BetterInternet EULA.

c.     Third, for Internet users who do not have Microsoft Windows' Service Pack 2 installed on their computer, they are asked to agree to a "Consumer Policy Agreement", but not the "End User License Agreement". However, there is not a "Consumer Policy Agreement" anywhere on DirectRevenue's web page, or elsewhere, for computer users to review.

***Once installed, DirectRevenue deceptively prevents users from removing its spyware.***

12.     After the deceptive installation of its spyware, DirectRevenue then engages in a uniformly deceptive course of conduct to prevent users from removing the spyware after it is installed. *Newsweek* reported that DirectRevenue has "changed its name so often that frustrated users can't find the company to complain." DirectRevenue also frequently changes the file names of its spyware so that anti-spyware programs and computer technicians cannot locate and remove them. Among DirectRevenue's misleading aliases, all used in an effort to deceive consumers, are: BestOffers, BetterInternet, Ceres, LocalNRD, MSView, MultiMPP, MXTarget, OfferOptimizer, and Twaintec. Notably, none of these names suggests any connection to DirectRevenue.

13.     DirectRevenue actually publishes instructions to make it impossible to remove the spyware. If users somehow managed to obtain the BetterInternet EULA, they would find that it states that:

"By entering into this Agreement, you represent to DR that you have intentionally chosen to install the Software and that you will personally uninstall the Software from your computer if you no longer wish the application to be present on your computer by going to http://mypctuneup.com/contacts.php and submitting the contact form".

However, no Internet web site can be found at that site when a computer user tries to access it:



14.     The most typical way to remove software on a computer is through Microsoft Windows' "Add or Remove" programs feature.     However, if a user uses this feature to uninstall the legitimate software downloaded (i.e. the game), DirectRevenue's spyware remains on their computer.  In other words, while DirectRevenue bundles the spyware into the legitimate software to *unlawfully gain access to a computer*, it "unbundles" when the user tries to get the *spyware off of his/her computer*.

15.     Furthermore, if a computer user were to look at each of the dozens of programs installed on his or her computer that are listed in the "Add or Remove" programs features, there is no

8

program called BetterInternet, DirectRevenue, or anything similar. Instead, the spyware is deceptively listed under various misleading names, such as "Ceres", so computer users will not uninstall that program.

*Advertisers overwhelm computers with unsolicited advertisements by utilizing the spyware downloaded to Plaintiffs' computers.*

16.    Advertisers aQuantive, AccuQuote, and others, have access to millions of computers for their targeted advertising by utilizing DirectRevenue's spyware and Plaintiffs' computers. They, or companies they have hired to advertise on their behalf, bombard users' computers with ads that constantly "pop up" over whatever web page a user is viewing.

17.    The advertisements are sent in a manner that breaches the security of affected computers through bypassing commonly-used "pop-up" blocker software, designed to stop adds, like those from Defendants, from "popping up" on a computer screen.

18.    Once an advertisement is sent, it generally remains on the computer screen until such time as the computer user actually closes the advertisement. But even when the computer user closes the advertisements, advertisements are still sent over and over again, and users receive many DirectRevenue ads repeatedly. Indeed, *Newsweek* reported that DirectRevenue may have as many as *1.5 billion* advertising impressions (i.e., pop-ups) *per month.*

19.    DirectRevenue, and companies who advertise through it, seize on Plaintiffs' concerns and frustration about why their computers are malfunctioning, slowing down, and wondering whether someone is monitoring their use. Indeed, advertisements are sent to deceptively give the user the appearance that there is a "Security Alert" being sent by the user's computer itself or from Microsoft Windows, which states that "Spy Software may be installed in your Computer".

9

However, the apparent message from the computer is an advertisement seeking to scare computer users. For example:



***Damage Caused by Defendants' Unlawful Conduct***

20.     DirectRevenue's spyware destroys other software programs on a computer. Furthermore, spyware and advertisements cause computers to slow down, take up bandwidth over an Internet connection, use up memory on a computer, utilize pixels and screen-space on monitors, and frustrate computer users. Spyware and pop-up advertisements decrease productivity by requiring that hours be spent figuring out how to get them off of a computer, closing advertising, and waiting for a slower machine to operate. Furthermore, computer users are forced to keep their computers running longer (due to the slowed performance) which utilizes more electricity, decreases the useful life of a computer, and causes increased Internet access charges. The

cumulative impact of not only multiple ads, but also the threat of future ads, impedes computer

usage. The cost to purchase software to effectively remove spyware, unwanted advertisements,

and guard against future infections is approximately $30 per year.

## CLASS ALLEGATIONS

21.     Plaintiff brings each of the claims in this action in his own name and on behalf of a class

of all persons similarly situated ("the Class") pursuant to 735 ILCS 5/2-801.[3]

22.     The Class definition is as follows:

> "All persons and entities who had BetterInternet installed on their computers, located in
> Illinois, in or after April 1, 2002—and who had advertisements sent to their computers as
> a result."

> A sub-class of persons is defined as "All persons or entities who had BetterInternet
> downloaded from an Internet site that displayed to them a copy of BetterInternet's End
> User License Agreement."

> A second sub-class of persons is defined as "All persons or entities who had
> BetterInternet downloaded from an Internet site that did not display a copy of
> BetterInternet's End User License Agreement."

23.     The Class is so numerous that joinder of all members is impractical.  Upon information

and belief, there are approximately 400,000 affected computers in Illinois.

24.     There are questions of law and fact which are common to the Class which predominate

over any questions affecting only individual members, including:

      a.     Whether Illinois law recognizes an action for trespass to chattels for electronic

         transmissions;

      b.     Whether Defendants have committed a trespass to chattels;

      c.     Whether DirectRevenue intended to deceive people into downloading software;

      d.     The extent of damage needed to sustain a claim for trespass to chattels;

---

[3] This action may not be removed to Federal court under the Class Action Fairness Act because all Plaintiffs are
from Illinois and because Byron Udell & Associates is a Defendant against whom Plaintiffs seek substantial relief.

e.   Whether Defendants have unfairly profited by using Plaintiffs' computers;

f.   Whether DirectRevenue has violated the Consumer Fraud Act;

g.   Whether Defendants have been unjustly enriched as a result of their misconduct; and

h.   Whether DirectRevenue's conduct in downloading bundled software constitutes Computer Tampering under the Illinois Criminal Code.

25.   The representative party will fairly and adequately protect the interest of the class. Plaintiff's claims are typical of the claims of the Class. All are based upon the same factual and legal theories. Plaintiff has retained counsel who is competent and experienced in class litigation. Plaintiff had DirectRevenue's spyware downloaded to his computer and was sent the typical amount of advertisements experienced by other Class members.

26.   The class action is an appropriate method for the fair and efficient adjudication of the controversy. The intentionally deceptive conduct of Defendants makes it difficult to sue them, let alone ascertain who they are for a lawsuit. Indeed, Plaintiffs' counsel was forced to retain expert assistance just to identify how Defendants' carry out their misconduct and who is involved. Furthermore, the likely individual recovery would not warrant a separate lawsuit due to the expensive nature of litigation, hiring experts, and paying lawyers.

## Count I
### Trespass to Personal Property/Chattels
(against all Defendants)

27.   Plaintiff re-alleges paragraphs 1 through 26 as if fully set forth herein.

28.   At all times relevant hereto, Plaintiff was the owner of a computer or internet connection that was infected with Defendants' spyware.

29.   At all relevant times, Defendants and/or their agents intentionally and without consent, used Plaintiffs' computer and internet connections, gained access to Plaintiffs' computers,

12

monitored Plaintiffs' Internet usage, sent advertisements to Plaintiffs' computers, accessed various components and systems within Plaintiffs' computers, obtained access to information about Plaintiffs and their computers, took up space on Plaintiffs' computers, and/or dispossessed Plaintiffs of access to their computers.

30.     In doing so, Defendants intentionally intermeddled with, damaged, and deprived Plaintiffs of their computers and/or Internet connections, or a portion thereof.

**Count II**
**Illinois Consumer Fraud Act**
(Against DirectRevenue only)

31.     Plaintiffs re-allege paragraphs 1 through 30 as if fully set forth herein.

32.     At all relevant times, there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1.

33.     Section 2 of the Consumer Fraud Act, 815 ILCS 505/2 provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

34.     The Consumer Fraud Act incorporates § 2 of the Uniform Deceptive Trade Practices Act by prohibiting "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to ... the use or employment of any practice described in § 2 of the Uniform Deceptive Trade Practices Act."

13

35.   The Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, provides in pertinent part,

at Section 2:

> A person engages in a deceptive trade practice when, in the course of his or her
> business, vocation, or occupation, the person:
>
> (1) passes off goods or services as those of another;
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship,
> approval, or certification of goods or services;
>
> ***
>
> (9) advertises goods or services with intent not to sell them as advertised;
>
> ***
>
> (12) engages in any other conduct which similarly creates a likelihood of confusion or
> misunderstanding.

36.   DirectRevenue engaged in deceptive and misleading advertisements by downloading its

spyware onto computers while computer users thought they were downloading "free" software.

This advertising is false because the software is not "free". To the contrary, the spyware gives

DirectRevenue and its advertisers access to engage in ongoing interference with a computer,

subjects the computer user to monitoring, and results in the destruction of software loaded onto a

computer. Furthermore, DirectRevenue falsely tells consumers that it does not track Internet

browser behavior.

37.   By secretly bundling its software with that of legitimate software programs such as

games and screensavers, DirectRevenue is passing off its spyware as good or services of another.

38.   DirectRevenue has also set up its spyware to intentionally confuse, deceive, and mislead

consumers into downloading its software, into keeping the software on a computer once

installed, and into purchasing anti-spyware software so the advertisements will stop.

14

39.    DirectReveune's software is also misleading in that it makes it difficult to remove its spyware from computers once installed as alleged herein.

40.    DirectRevenue's failure to notify consumers that its spyware damages computers, is difficult to remove from a computer, will slow down and/or damage the performance of a computer, and will result in persistent and distasteful advertising is an omission of material fact in violation of the Consumer Fraud Act.

41.    DirectRevenue intended to profit, and did actually profit, from its wrongful conduct by being able to obtain more adverting money by virtue of being downloaded onto more computers.

42.    DirectRevenue knew that its conduct was deceptive and misleading and intended for consumers to be deceived so they would download spyware along with other legitimate software. DirectRevenue's method of distributing its spyware created and continues to create a substantial likelihood of confusion, deception, and misunderstanding.    Such deception occurred in the course of trade and commerce.

43.    As a direct and proximate cause of DirectRevenue's misrepresentations and deception, the damage alleged herein occurred.

44.    DirectRevenue's conduct as alleged herein constitutes an unfair practice because it is unlawful, offends public policy, it is immoral, unethical, oppressive and unscrupulous, and it results in substantial injury to consumers.

45.    Injunctive relief is warranted to stop Defendants' ongoing deceptive conduct, to prevent DirectRevenue's software destruction, and to prevent the ongoing invasion of Plaintiffs' privacy.

### Count III
### Unjust Enrichment
(against all Defendants)

46.    Plaintiffs re-allege paragraphs 1 through 45 as if fully set forth herein.

15

47.     As a result of Defendants' schemes as alleged herein, they unjustly enriched themselves at Plaintiffs' detriment.   aQuantive and DirectRevenue earned additional advertising fees. AccuQuote received additional business that it was not entitled to receive.

48.     If consumers learned of Defendants' deceptive marketing and advertising as alleged herein, they would have lessened or stopped their business dealings with AccuQuote.   In addition, reputable companies would no longer be willing to advertise through aQuantive or DirectRevenue.

49.     Defendants' retention of these benefits violates fundamental principles of justice, equity and good conscience.

**Count IV**
**Negligence**
(against DirectRevenue only)

50.     Plaintiffs re-allege paragraphs 1 through 49 as if fully set forth herein.

51.     DirectRevenue, having gained access to Plaintiffs' computers, had a duty not to harm the computers and impact their operation.   Furthermore, DirectRevenue had a duty to monitor its spyware distributors to assure that they obtained user consent for downloading DirectRevenue spyware.

52.     DirectRevenue breached this duty by damaging Plaintiffs' computers and interfering with their operation and by not adequately monitoring its spyware distributors.

53.     As a direct and proximate result of DirectRevenue's negligence, Plaintiffs were damaged as alleged herein.

**Count V**
**Computer Tampering - Criminal Code**
(Against DirectRevenue only)

54.     Plaintiffs re-allege paragraphs 1 through 53 as if fully set forth herein.

16

55.     Section 16D-3 of the Illinois Criminal Code (720 ILCS 5/16D-3) provides in part:

(a) A person commits the offense of computer tampering when he knowingly and without the authorization of a computer's owner, as defined in Section 15-2 of this Code, or in excess of the authority granted to him: ***

(4) Inserts or attempts to insert a "program" into a computer or computer program knowing or having reason to believe that such "program" contains information or commands that will or may damage or destroy that computer, or any other computer subsequently accessing or being accessed by that computer, or that will or may alter, delete or remove a computer program or data from that computer, or any other computer program or data in a computer subsequently accessing or being accessed by that computer, or that will or may cause loss to the users of that computer or the users of a computer which accesses or which is accessed by such "program";

56.     Defendants' conduct, as alleged herein, violated Section 16(D)(3) and proximately caused the damage alleged herein.

57.     Section 16(D)(3), provides that:

"Whoever suffers loss by reason of a violation of subsection (a)(4) of this Section may, in a civil action against the violator, obtain appropriate relief. In a civil action under this Section, the court may award to the prevailing party reasonable attorney's fees and other litigation expenses."

### PRAYER FOR RELIEF

Wherefore, Plaintiff and the Class pray for the following relief:

A.      An order certifying the Plaintiff Class as set forth herein, with Plaintiff as the Class representative and his counsel as Class counsel;

B.      Judgment in favor of Plaintiff and the Class and against Defendants and awarding damages in the form of compensatory, punitive, loss of use, diminution in value, loss of enjoyment and use, and disgorgement of ill-gotten gains;

C.      Injunctive relief enjoining the deceptive and misleading marketing practices, the sending of advertisements, and the damage to computers;

D.      An award of reasonable attorneys' fees, costs, and expenses; and

E.    Such further relief as this Court deems just and proper.

### Jury Demand

Plaintiff and the Class members demand a trial by jury.

DATED: March 31, 2005          Respectfully submitted,

                               STEPHEN SOTELO

                       By:     _____
                               One of his attorneys

David J. Fish
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street, Suite 200
Naperville, Illinois 60563
(630) 527-1595
Attorney Number: 32920

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| STEPHEN SOTELO, individually and<br>on behalf of all persons similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>DIRECTREVENUE, LLC;<br>DIRECTREVENUE HOLDINGS, LLC;<br>BETTERINTERNET, LLC, BYRON<br>UDELL & ASSOCIATES, INC., D/B/A<br>ACCUQUOTE; AQUANTIVE, INC., and<br>JOHN DOES 1-100,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No.  05 CH 05883<br><br>**JURY DEMAND** |

## NOTICE OF FILING

To:    SEE ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on this 18th day of April, 2005, I caused to be filed with

the Clerk of the Circuit Court of Cook County, Illinois, the attached: **Plaintiff's Motion to**

**Certify Class** and Notice of Motion and hereby serve upon you copies of the same.

DATED: April 18, 2005             Respectfully Submitted,

                                      **STEPHEN SOTELO**, individually and on behalf
                                      of all persons similarly situated

                                      By: _____

David J. Fish
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street, Suite 200
Naperville, IL 60563
(630) 527-1595

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the **Plaintiff's Motion to Certify Class** was sent to the following counsel of record via First Class Mail on April 18, 2005:

DirectRevenue, LLC
c/o Phillips Nizer LLP
Attention: Albert H. Wang
666 Fifth Avenue
New York, New York 10103

Matthew J. Gehringer
Scott H. Gingold
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603

Byron Udell & Associates, Inc.
c/o Byron Jay Udell
1400 S. Wolf Rd Blvd 500
Wheeling, Illinois 60056

By: _____
David J. Fish

David J. Fish
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street, Suite 200
Naperville, Illinois 60563
Attorney No. 32920

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| STEPHEN SOTELO, individually and<br>on behalf of all persons similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>DIRECTREVENUE, LLC;<br>DIRECTREVENUE HOLDINGS, LLC;<br>BETTERINTERNET, LLC, BYRON<br>UDELL & ASSOCIATES, INC., D/B/A<br>ACCUQUOTE; AQUANTIVE, INC., and<br>JOHN DOES 1-100,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 05 CH 05883

**JURY DEMAND**

## NOTICE OF MOTION

TO:   See Service List

PLEASE TAKE NOTICE that on ___May 4, 2005___ at 9:30 a.m., or as soon

thereafter as counsel can be heard, I shall appear before the Honorable Judge Richard J. Billik, in

Courtroom 2601, Circuit Court of Cook County Courthouse, 50 W. Washington, Chicago,

Illinois, and shall then and there present the attached **Plaintiff's Motion to Certify Class**, and

hereby serve upon you a copy of same.

Date: April 18, 2005

Respectfully submitted,

**STEPHEN SOTELO**, individually and on behalf
of all persons similarly situated

By:     _____
           One of Plaintiff's Attorneys

David J. Fish
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street, Suite 200
Naperville, IL 60563
(630) 527-1595

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION

STEPHEN SOTELO, individually and )
on behalf of all persons similarly situated, )
                                  )
        Plaintiffs, )
                                  )
       v. )
                                    )     Case No. 05 CH 05883
DIRECTREVENUE, LLC; )
DIRECTREVENUE HOLDINGS, LLC; )
BETTERINTERNET, LLC, BYRON )     **JURY DEMAND**
UDELL & ASSOCIATES, INC., D/B/A )
ACCUQUOTE; AQUANTIVE, INC., and )
JOHN DOES 1-100, )
                                  )
       Defendants. )

## PLAINTIFF'S MOTION TO CERTIFY CLASS

Plaintiff, Stephen Sotelo, individually, and on behalf of all others similarly situated, by and through his attorneys, The Collins Law Firm, P.C., hereby move this Court to enter an Order certifying this matter as a Class Action, pursuant to 735 ILCS 5/2-802, and in support, state as follows:

      1.     The grounds for this Motion are more fully set forth in Plaintiff's Memorandum in Support of this Motion, which will be filed upon presentment of this Motion.

      2.     The Class is so numerous that joinder of all members is impracticable.

      3.     There are questions of fact or law common to the Class, which common questions predominate over any questions affecting only individual members.

      4.     The representative parties will fairly and adequately protect the interest of the Class.

5.     The class action is an appropriate method for the fair and efficient adjudication of this controversy.

6.     The requirements of 735 ILCS 5/2-801 are fully met.

WHEREFORE, Plaintiffs respectfully move that this Court enter an Order certifying this case as a Class Action.

DATED:  April 18, 2005                    Respectfully submitted,

                                          **STEPHEN SOTELO**, individually and on behalf
                                          of all persons similarly situated

                                          By:  _____
                                               One of his attorneys

David J. Fish
THE COLLINS LAW FIRM, P.C.
1770 North Park Street, Suite 200
Naperville, Illinois 60563
(630) 527-1595
Attorney Number: 32920

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

STEPHEN SOTLEO, individually and on behalf of all persons similarly situated,

        Plaintiffs,

    v.

DIRECTREVENUE, LLC; DIRECTREVENUE HOLDINGS, LLC; BETTERINTERNET, LLC; BYRON UDELL & ASSOCIATES, INC., D/B/A ACCUQUOTE; AQUANTIVE, INC., and JOHN DOES 1-100,

        Defendants.

Case No. ____ ___ ___ _____

## CERTIFICATE OF SERVICE

I, Anthony Hind, an attorney, hereby certify that a true and correct copy of the Notice of Removal of Defendants DirectRevenue, LLC, DirectRevenue Holdings, LLC, and BetterInternet, LLC ("Defendants") was served via courier hand delivery on this 29th day of April 2005, upon counsel for Plaintiffs at the following address:

> David J. Fish
> The Collins Law Firm, P.C.
> 1770 N. Park Street, Suite 200
> Naperville, Illinois 60563
> Attorneys for Plaintiff

I further certify that on this same date I caused these papers to be served upon the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, via hand delivery.

I further certify that on this same date, I caused Defendants' Notice of the Filing of Notice of Removal to be filed with the Circuit Court of Cook County, Illinois, County Department, Chancery Division. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated: April 29, 2005