IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN SOTELO, individually, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTREVENUE, LLC, and BETTERINTERNET, LLC,<br><br>Defendants. | No. 05 C 2562<br><br>Judge Kendall |

## FINAL APPROVAL ORDER AND JUDGMENT OF DISMISSAL

In the Preliminary Approval Order dated March 10, 2006, this Court scheduled a Final Approval Hearing for April 24, 2006 at 2:00 p.m. to determine whether: (a) the proposed settlement on the terms and conditions set forth in the Settlement Agreement and Limited Release (the "Agreement") is fair, reasonable and adequate, and (b) final judgment (in the form of the Order attached to the Agreement as Exhibit E) should be entered. The Court also ordered that the Summary Settlement Notice (Exhibit C to the Agreement) and the Settlement Notice Exhibit D to the Agreement) be published to the Class in the manner described in the Preliminary Approval Order.

The Final Approval Hearing on the Agreement was duly held before this Court on April 24, 2006 and in a continued session on June 19, 2006, at which times all interested persons were afforded an opportunity to be heard. This Court has duly considered all of the submissions and arguments presented on the proposed settlement.

**NOW, THEREFORE, THIS COURT FINDS, CONCLUDES, ADJUDGES AND DECREES THAT:**

1. The Court certifies for purposes of settlement the following defined class (the "Class") pursuant to Federal Rule 23(b)(2): "All persons or entities who owned computers in Illinois and who had Defendants' targeted advertising software (the

"Software")[1] downloaded onto their computers in Illinois at any time after March 31, 2002." Excluded from the Class are Defendants, and all of their officers, directors, employees, agents and attorneys;

2. The proposed settlement of the claims of Plaintiff and the Class on the terms and conditions set forth in the Agreement is fair, reasonable, adequate, in the best interests of the Class, and is hereby approved;

3. The class representative (Stephen Sotelo) and Class Counsel (The Collins Law Firm and Varga Berger Ledsky Hayes & Casey) have fairly and adequately represented the interests of the Class in this matter and in its resolution;

4. This Order is binding on Plaintiff and all members of the Class. The Settling Defendants are bound by their obligations under the Agreement. The Agreement shall be consummated in accordance with the terms and provisions of the Agreement. The parties are directed to carry out their obligations under the Agreement;

5. Pursuant to Paragraph 3 of the Agreement, as of the Effective Date of the Agreement, the Settling Defendants are enjoined and restrained, with respect to all users and computers in the State of Illinois, as follows:

   a. DirectRevenue will not collect any personally identifiable information (name, address, social security number, e-mail address, bank account information, etc.) about computer users. To the extent that DirectRevenue possesses any such data, said data will be destroyed. DirectRevenue shall provide to Class Counsel an affidavit by one of its officers so certifying the destruction and non-existence of such data within fourteen (14) days of the Effective Date of this Agreement.

---

[1] The term Software is defined in the Settlement Agreement to include the following DirectRevenue ad client software files: Bi.dll, Btgrab.dll, Dlmax.dll, pynix.dll, Host.dll, IPInsigt.dll, LocalNRD.dll, VX2.dll, Ceres.dll, Speer2.dll, AHexe.dll, Aurora.exe (polymorphic), Tbon.exe, Tbonuac.exe (polymorphic), Gsim.dll, Dinst.dll, TBONcomp.dll, MultiMPP.dll, mxTarget.dll, iehelper.dll, TSP108.dll, Twaintec.dll, VoiceIP.dll, ZServ.dll, Speer.dll, Speeryox.dll, kz515.dll, buddy.exe, Tbonsn.exe, Tboncst.exe, systb.dll, dinst.exe, TBONAS.exe. The defined term Software also includes any client software that serves pop-up and/or pop-under advertising created in the future by the Settling Defendants.

b. DirectRevenue will assure that, prior to the installation of the Software, computer users are (a) provided with DirectRevenue's End User License Agreement ("EULA"), and (b) given two choices, of equal prominence within the modal box or landing page, to the effect of:

**"I have read and accept the agreement"** or

**"I do not accept the terms of the agreement"**

The "accept" option will not be a default option. If the user selects the "I do not accept" choice, the Software will not be installed.

c. In addition to providing computer operators with its EULA, DirectRevenue will also disclose, separate and apart from the EULA, that: (1) users will receive advertisements while online, along with a brief description of the types of ads that will be displayed; (2) DirectRevenue will collect information about web sites visited by users; (3) users may receive ads with adult content if and while they are visiting websites with adult content; if that is the case, and (4) the Software will be included in their installation of the ad-supported software. This disclosure will be independently displayed within the modal box containing the "I have read and accept" and "I do no accept" choices described above. The additional disclosures shall appear above the choices described in subparagraph b, above, but will end no more than one inch away from those choices.

d. DirectRevenue will not install Software via ActiveX installations, security exploits, or by any other method that does not require users' affirmative consent.

e. In DirectRevenue's EULA, DirectRevenue will disclose the fact that the Software serves pop-up ads based on web sites visited by the user, and that DirectRevenue collects non-personally identifiable information, in order to serve those ads. The EULA will explain DirectRevenue's use of the non-personally identifiable information. The EULA will also notify users as to how the Software can be uninstalled, and will provide information on how to access DirectRevenue's website and customer support.

f. Without charge, DirectRevenue will provide help to consumers in removing the Software via e-mail. In addition, DirectRevenue will provide a toll free telephone number that will allow consumers to call and receive a recorded message that includes: (1) detailed instructions about how to remove the Software, and (2) information directing users to locations on the Internet to learn more information about how to remove the Software.

g. In new distribution contracts, DirectRevenue will require distributors to abide by the policies represented in this settlement. DirectRevenue will closely police its distributors. If DirectRevenue learns that a distributor is

3

violating these terms, DirectRevenue will take appropriate action based on the circumstances of the violation, potentially including termination of the distributor.

h. Distributors will not be permitted to use sub-distributors unless those entities are bound by contract to adhere to the policies represented herein.

i. DirectRevenue will not distribute the Software via web sites targeted primarily at children. The EULA will include a disclosure that the Software should only be installed by users 18 years of age and older, and instructions (or a reference link to such instructions) on how to manage the user's operating system to minimize the possibility that children will be served with ads by the Software. DirectRevenue will disclose to Net Nanny (and similar services) the IP address of any server sending adult content ads through the Software.

j. DirectRevenue will not use the word "free" in banner ads describing the underlying program (i.e., the screen saver or video game) unless the ad also discloses that the program is ad-supported.

k. When the Software displays a pop-up ad, the "X" button on the title bar of the ad window (used to close the ad window) will not appear off-screen, unless this effect is caused by a technical issue without DirectRevenue's knowledge or beyond DirectRevenue's control.

l. All DirectRevenue ads will include a "?" button on the title bar, or a text link indicating that further information is available, which displays information about the Software when clicked. This information will include (1) an explanation of why the user is receiving the ad; (2) the identity of the consumer application the user downloaded with the Software (when and to the extent this is technically feasible); and (3) an instruction that, if the user so desires, the user can uninstall the Software using the Windows "Add/Remove Programs" function.

m. The Software will not display adult content ads unless the user is viewing adult websites. DirectRevenue will disclose to Net Nanny (and similar services) the IP address of any server sending adult content ads through the Software.

n. The Software will be listed in the Windows "Add/Remove Programs" list under the exact same name used in branding the ads. DirectRevenue will make removal of the Software easy.

o. DirectRevenue will not modify security settings on users' computers.

p. DirectRevenue will not reinstall its Software once a user has uninstalled it through the Windows "Add/Remove Programs" function, unless the user

4

later opts to download and install another bundled application and the installation proceeds in accordance with the terms herein.

q. DirectRevenue will not delete other software on the user's computer other than any underlying program (e.g. screensaver) that was bundled with the Software upon the user's removal of the Software.

r. DirectRevenue will not materially modify the Software's functionality without providing the user with notice and an opportunity to uninstall the Software.

s. DirectRevenue will agree to limit its advertisements to a network average of 10 or less per computer per 24-hour period.

t. DirectRevenue agrees that its removal instructions shall continue to be posted in a form in substantial conformity with that currently found at: http://www.bestoffersnetworks.com/uninstall/.

u. Upon request by e-mail identifying the user seeking assistance as visually impaired, DirectRevenue will personally assist (through live telephone support) any visually impaired person in removing the Software.

v. DirectRevenue will limit its number of name changes used on its advertisements (*i.e.*, "Best Offers") to once per two years.

w. DirectRevenue will agree to purchase sponsored links, if Google is willing to sell such sponsored links, that provide links to help consumers remove DirectRevenue software. At a minimum, DirectRevenue will agree to purchase links, if Google is willing to sell such sponsored links, for "BestOffers" and "BestOffers removal". By clicking on the sponsored link, the user will be taken to an Internet page with instructions on how to remove the Software. Should DirectRevenue change the name of its software, it will purchase sponsored links with the new name of the Software referenced.

6. The Summary Settlement Notice and Settlement Notice published as specified in the Agreement following entry of the Preliminary Approval Order constituted the best notice practical under the circumstances and are in full compliance with the notice requirements of due process and Fed R. Civ. P. 23;

7. Upon the Effective Date of the Agreement, Plaintiff and the Class are permanently enjoined from prosecuting or continuing to prosecute claims within the scope of the limited release set forth in Paragraph 4 of the Agreement. As

5

specified in Paragraph 4 of the Agreement, Plaintiff and all members of the Class are not releasing, and expressly reserve, the right to assert individual claims for damages against the Settling Defendants, and nothing in this Order shall be construed to impair such rights;

8. All of the claims for injunctive relief asserted in this lawsuit by Plaintiff are dismissed with prejudice. Plaintiff's claims for monetary damages are dismissed without prejudice to later refiling in an individual action by Plaintiff;

9. The Court approves the award of attorneys' fees and costs to Class Counsel as specified in Paragraph 8 of the Agreement; and

10. This Court retains jurisdiction over all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of the Agreement and this Order. The Court specifically retains jurisdiction over any claims by a Class member asserting breach of the terms of this settlement.

IT IS SO ORDERED

Dated: June 19, 2006

Virginia M. Kendall, Judge
United States District Court